PODESTA et al. v. PODESTA.—189 S. W. (2d), 413.

Western Section. April 16, 1945.

Petition for Certiorari denied by Supreme Court. June 30, 1945.

Affirmed.

Burch, Minor & McKay and Canale, Glankler, Loch & Little, all of Memphis, for Elizabeth Podesta and Emma Fransioli, petitioners.

Costen, Crabtree,, Martin & Costen, of Memphis, for Elizabeth Stagner Podesta, executrix, etc.

KETCHUM, J. By their bill in this case the complainants Miss Elizabeth Podesta and Mrs. Emma Fransioli, sisters of Charles Podesta, deceased, seek to recover from Mrs. Elizabeth Stagner Podesta, individually, and in her capacity as executrix of the will of Charles Podesta, (1) the unpaid balances alleged to be due them under the will of the testator of date September 21, 1915; and (2) their attorneys' fees and expenses in contesting a later writing made in 1933 which was offered for probate as the holographic will of said testator but which was held not to be entitled to probate as such because not found among his valuable papers after his death, Fransioli v. Podesta, 21 Tenn. App. 577, 113 S. W. (2d) 769; but which was later admitted to pro-

bate as a valid will of personalty, as a codicil to and a part of the will of 1915, the two instruments together being adjudged to be and constitute the whole and true last will and testament of the said testator. 175 Tenn. 340, 134 S. W. (2d) 162.

The chancellor held and decreed that the legacies to the complainants in the 1915 will were completely revoked and nullified by the 1933 will, and that the complainants were not entitled to any allowance for their attorneys' fees and expenses incurred in the two proceedings to contest the 1933 will, because the contests were for their own personal benefit, and they were unsuccessful and the estate was in no way benefited thereby. He therefore dismissed the bill, and to obtain a review of this decree the complainants have filed the record for writ of error in this court.

The 1915 will was executed with all the formalities necessary to entitle it to probate as a will of realty as well as personalty. Omitting the formal parts thereof its provisions are as follows:

"Item 1. I direct that all my just debts be paid by my executors."

"Item 2. I give, devise and bequeath to my wife Elizabeth Stagner Podesta all my real estate, all my personal property consisting of money, household goods, stocks, insurance, automobiles, etc."

"Item 3. Out of the above bequests I give and bequeath to my sister Elizabeth Podesta the sum of Six Thousand Dollars ($6000), to be paid as a whole, or at the rate of $100.00 (One Hundred Dollars) per month until paid, without interest. This is optional with my executors."

"Item 4. I give and bequeath out of my estate to my sister Mrs. Emma Fransioli, the sum of Six Thousand

Dollars ($6000.00) to be paid the same as Item 3."

"Lastly, I hereby nominate and appoint my wife Elizabeth S. Podesta and the Union & Planters Bank & Trust Company executors of this my last will and testament."

The testator, Charles Podesta, died on May 14, 1933, and this will was seasonably admitted to probate and the named executors were duly qualified as such. Soon thereafter, however, the Union & Planters Bank & Trust Company resigned as executor, leaving Mrs. Podesta as the sole executrix of the said will.

The testator left a considerable estate, consisting of both realty and personalty. The real estate embraced his residence, a large apartment building on Madison Avenue in Memphis, two stores on Beale Avenue, and undivided interests in other properties which were unproductive; his death occurred at a time of great financial depression, and the rental property was run down, some of it vacant, and three years delinquent taxes amounting to over $5500 had accumulated. The personal estate was exhausted and it became necessary to sell one of the stores on Beale Avenue to pay the debts, funeral expenses, delinquent taxes, inheritance taxes, and expenses incident to winding up the estate. The result was that there were no funds out of which the legacies to the complainants could be paid at the rate of $100 per month as provided in the will; so on June 5, 1934, the parties entered into an agreement which provided for the payment of these legacies at the rate of $50 per month, and under this arrangement the sum of $600 was paid to each of the complainants on their legacies.

In November or December, 1935, which was about two and a half years after the death of the testator, the 1933 will was found in the pocket of a coat which the testator

had worn the day on which he suffered a stroke of paralysis, about seven weeks before his death. He was rendered absolutely helpless by this stroke and was never able to utter an intelligible word thereafter. The will was written on a leaf torn from a small note book and was in the hand writing of the testator, and in the following words: ''March 26, 1933. I will all to my wife. Chas. Podesta.''

After the discovery of this instrument the widow offered it for probate as a holographic will, and the complainants contested it, and it was held that it was not entitled to probate as a holographic will. She then offered it for probate as a will of personalty and it was sustained as such. The judgment of the court was that it was a valid will as to the personalty; that the 1915 will was the last will as to the realty; ''and that the two instruments together, as aforesaid, constitute the whole and true last will and testament of Charles Podesta.''

After the 1933 will was held to be a valid will as to personalty the widow took the position that it operated as a complete revocation of the legacies to the complainants under the 1915 will, and she discontinued the payments of the monthly installments which she had been making on those legacies. This was upon the theory that the personalty was the sole fund out of which the legacies were to be paid, and since the personalty had been exhausted in the payment of debts there was nothing left out of which the legacies could be paid. In effect her contention was that the legacies to the complainants were completely revoked by the 1933 will.

Because of her refusal to make any further payments on their legacies the complainants filed their bill in the present case.

The first two assignments of error by the appellants complain of the chancellor's ruling that the 1933 will

revoked and nullified entirely the pecuniary legacies given to them under the 1915 will and exonerated the real estate from the payment of said legacies. It is their contention that their legacies constituted a charge upon the real estate, and that the 1933 will, being effective as to the personalty only, was ineffectual to revoke the 1915 will in so far as it imposed a charge upon the real estate for the payment of their legacies. Or, to state it differently, that since a will effectual to dispose of real estate is necessary in order to impose a charge upon the real estate for the payment of their legacies, it follows that a will of equal dignity, that is, one good as to realty as well as personalty, is necessary in order to exonerate the real estate from such a charge.

Since the two instruments together have been adjudged to constitute "the whole true and last will" of the testator they are to be considered together as a composite writing and all of its provisions are to be looked to for the purpose of ascertaining the intention of the testator. The intention of the testator is the cardinal rule by which the courts are to be governed in the construction of wills, and that intention is to be gathered from the scope and tenor of the whole will, and that intention when fairly ascertained will be given effect unless it be in violation of some established principle of law or in contravention of public policy. For the purpose of ascertaining the intention of the testator all parts of the will will be looked to and apparent inconsistencies will be reconciled and resolved so that each legacy and devise will be sustained and upheld if possible to do so without doing violence to the language used. Hoggatt v. Clopton, 142 Tenn. 184, 192, 217 S. W. 657; Frank v. Frank, 120 Tenn. 569, 580, 111 S. W. 1121; Magevnay v. Karsch, 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343.

The first question to be considered in connection with these two assignments of error is the question whether a charge was imposed upon the real estate for the payment of these legacies. This question must be answered in the affirmative.

The general rule on the subject, and one supported by the overwhelming weight of authority, is stated in 69 C. J., page 1178, section 2501, in the following language:

"Where pecuniary legacies in a will are given generally, followed by a general disposition of the whole residue of the estate, both real and personal, blended as one mass or fund, it is now a general rule in most jurisdictions, that the legacies are charged on the entire residue, including the residuary real estate as well as the personalty, for the reason that in such a case the "residue" can mean only what remains after satisfying the previous debts and legacies."

To the same effect, see 28 R. C. L., page 306, sec. 287, and note in 42 A. L. R., pages 654-705.

It was so held in this State in Hutchinson v. Gilbert, 86 Tenn. 464, 7 S. W. 126, 128, where it is said:

"The rule of construction that a gift or bequest of a money legacy, followed by a gift of the residue of the real and personal estate, indicates an intention that the former is to be paid out of the testator's real estate, if necessary to do so after paying debts, and will be a charge upon such real estate, commends itself to us, not only on account of the high authority therefor, but because it addresses itself to our judgment, as founded upon the 'rule of rules' in relation to wills, which makes the intention of the testator the corner-stone upon which all construction must rest."

■ We think this rule is applicable in the instant case. It will be borne in mind that after having first directed that his debts be paid, the testator in the second item of the will, gave to his wife his entire estate, real and prsonal, blended in one mass; and then by item 3 he gave "out of the above bequests" the sum of $6000 to his sister Elizabeth, and by item 4 he gave "out of my estate" the sum of $6000 to his sister Emma Fransioli. There was no property out of which these bequests could be paid except that given to his wife in the second item of the will under the general description of "all my real estate, all my personal property," etc. No significance is to be attached to the use of the words "bequests" in the third item and the word "estate" in the fourth item. There is nothing to indicate that the testaor intended to make any discrimination between his two sisters, and the word "bequests" in item three and the word "estate" in item 4 clearly refer to the gift of real and personal property made to his widow in item 2. The words "bequeath" and "bequest" are more accurately used with reference to testamentary gifts of personal property, but are not infrequently applied to gifts of real estate, and have been judicially construed by many courts to be synonymous with "devise" when used with reference to gifts of real estate. 28 R. C. L., page 289, sec. 262. In the Century Dictionary the word "bequest" is defined as "that which is left by will; a legacy;" and the word "bequeath" is defined as meaning "to give or leave by will; assign, as a legacy; more commonly, but not necessarily used of personal property, in contradistinction to real property, which is said to be devised."

■■ The word "estate" when unqualified is generally construed to embrace every description of property Nashville Trust Co. v. Grimes, 179 Tenn. 567, 167 S. W.

(2d) 994; 69 C. J. 1175. The words "bequests" and "estate" as used in items 3 and 4 of the 1915 will clearly refer to the property given to the widow in item 2 and embrace both real and personal property. We therefore hold that the legacies to the complainants were made a charge upon the real estate of the testator.

■ But it does not follow from this that the legacies to the complainants were not revoked by the 1933 will, which was good only as to personalty. These legacies were mere pecuniary legacies, and though made a charge on the realty, they were nevertheless bequests of personalty and created no estate in the realty. At most the charge on the realty was in the nature of an equitable lien on the realty, which was not an estate in the realty. Gibson's Chancery, sec. 1036; Pomeroy's Equity, secs. 1233, 1244.

Chancellor Gibson says in section 1036:

"An equitable lien is not an estate or property in the thing itself, nor a right to obtain possession of the thing. It is simply a right of a special nature over the thing, constituting a charge or encumbrance upon it entitling the owner of such right to subject the property so charged or encumbered to the satisfaction of that particular claim of his which constitutes the charge or encumbrance."

In Milam v. Milam, 138 Tenn. 686, 691, 200 S. W. 826, 827, it is defined in the following language:

"An equitable lien, strictly speaking, is not a jus in re or a jus ad rem, but it is the right to have the property subjected in a court of equity to the payment of the claim. It is a floating equity until action by the court is invoked."

This we think, is just the character of interest that the complainants had in the testator's realty to secure the payment of their legacies. They were given no interest in the realty itself, but merely the right to subject

it to the payment of their legacies if the personalty was insufficient. Although by operation of law the payment of their legacies was made a charge upon the testator's realty, the bequests were nevertheless bequests of personalty and it was within the power of the testator to revoke them, as he did do, by the 1933 will which was valid only as to personalty.

We agree with the appellants contention that a will valid as to real estate cannot be revoked by a will good only as to personalty. In Hickey v. Beeler, 180 Tenn. 31, 37, 171 S. W. (2d) 277, 279, the court quoted the following on this subject from Allen v. Jeter, 6 Tenn. 672, 674:

"A written will of either real or personal property cannot be revoked by parol: Allen v. Huff, 1 Yerg., 404. A will duly executed and attested by witnesses, as required by the Code, sec. 2162 (1932 Code, sec. 8089), or in the testator's own handwriting, found and proved, as required by the Code, sec. 2163 (1932 Code 8090), can only be revoked by an instrument of equal solemnity: Greer v. McCrackin, Peck 301, 14 Am. Dec. 755. The evidence of revocation, as it has been otherwise expressed, must be of dignity equal to the instrument revoked."

It has been finally adjudged in the instant case that the 1915 will was the last will of the testator as to his real estate but that the 1933 will was his will as to the personal estate. Since the complainants were given no estate in the realty in the 1915 will, it necessarily follows that their legacies were revoked by the later will which gave all of the personalty to the widow; and the revocation of their legacies carried with it the charge upon the real estate just as the payment of a mortgage note extinguishes the lien upon the real estate to secure it. Henson v. Henson, 151 Tenn. 137, 148, 268 S. W. 378, 37 A. L.

R. 1131; Vaughn v. Vaughn, 100 Tenn. 282, 284, 45 S. W. 677.

Having reached the conclusion that the legacies in favor of the complainants were revoked by the 1933 will, it results that the first two assignments of error will be overruled.

The next assignment of error complains of the action of the chancellor in refusing to allow the complainants, out of the estate, the reasonable compensation of their attorneys "in the litigation to establish the will of the testator." Their position in the litigation is that of contestants of the 1933 will. The will was sustained as a valid will as to the personalty and the effect has been to revoke and annul the legacies in their favor under the 1915 will. They have been unsuccessful in the litigation, and the services of their attorneys have resulted in no benefit to the estate. They say, however, that their contests were in good faith and that the widow of the testator occupied an inconsistent position in trying to sustain the 1933 will without resigning as executrix of the 1915 will. Their contention is that so long as she remained executrix of the 1915 will it was her duty to try to maintain the validity of that will. We think this argument is fallacious. She has never questioned the validity of the 1915 will and was making payments on the legacies in favor of the complainants under that will up to the time that the 1933 will was discovered. Although she was not named as executrix under the 1933 will, it was her duty to produce it and offer it for probate when she discovered it. It was written in the testator's own hand, signed by him, and had every appearance of being a valid will, and we think she acted in good faith in endeavoring to have it sustained as a valid will. She was the principal beneficiary under both wills and we cannot see that it was her

duty to resign as executrix under the 1915 will when she offered the later one for probate. If she had done so the court would undoubtedly have appointed her administratrix with the will annexed of the 1933 will; and the complainants have not in any way been prejudiced or hindered in the prosecution of their contests by the fact that the widow did not resign as executrix of the 1915 will.

It is their contention that they were given substantial legacies under the 1915 will and that so long as the widow remained executrix of that will it was her duty in every way possible to uphold that will; and that when she sought to have the 1933 will established, the duty devolved upon them as contestants to try to sustain the 1915 will.

It is true that complainants had the right as legatees under the 1915 will to contest the later one, and that in doing so they acted in entire good faith. But they were under no obligation to contest the 1933 will, and we cannot see that in doing so they were acting in the interest of the estate. Manifestly, they did so with the hope of saving their legacies for themselves rather than with a view of rendering a service to the estate. It is true that their attorneys have represented them with great skill and ability throughout the entire litigation, but, as we see it, their services were rendered to the complainants and have not resulted in any benefit to the estate.

So far as we have been able to ascertain there is no reported case in this State in which the unsuccessful contestant of a will has been allowed to have the fees of his attorneys paid out of the estate. In Smith v. Haire, 133 Tenn. 343, 181 S. W. 161, Ann. Cas. 1916D, 529, the widow of the testator who was named as executrix in a will in which she would have obtained the entire estate of the testator was held not to be entitled to have the fees of her attorneys in the defending the will paid out of the estate,

in a contest in which the will was set aside on account of her fraud and undue influence; and in that case the fees for the attorneys for the successful contestants were allowed to be paid out of the estate. 138 Tenn. 255, 197 S. W. 678. This was because of the bad faith of the widow.

The question as to the allowance of attorneys' fees in such cases has been elaborately annotated in exhaustive notes found in 10 A. L. R. 783, 805; 69 A. L. R. 1052, 1058; and 128 A. L. R. 1002 and 1011; and the great weight of authority supports the conclusion reached by the chancellor; viz., that the unsuccessful contestants were not entitled to have their attorneys' fees incurred in contesting the 1933 will paid out of the estate.

Our conclusion upon the whole record is that the 1933 will revoked and annulled entirely the legacies in favor of complainants in the 1915 will; and that the complainants are not entitled to have the fees of their attorneys in contesting the will paid out of the assets of the estate; and we accordingly affirm the decree of the chancellor in all respects. The costs will be awarded against the appellants and their sureties on the cost and appeal bonds.

ANDERSON, P. J., and PEARSON, Special Judge, concur.