IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 22, 2003

## IN RE: ESTATE OF DONALD LEE (D.J.) KEITH, JR.

**Appeal from the Chancery Court for Bledsoe County**
**No. P-429     Jeffrey F. Stewart, Chancellor**

**FILED JULY 28, 2003**

**No. E2002-02056-COA-R3-CV**

This is a will contest. Freddie A. Johnson and wife, Marie Johnson ("the grandparents"), filed a petition to probate the holographic will of their grandson, Donald Lee (D.J.) Keith, Jr. ("the decedent"). The decedent's widow, Alexis Keith ("the wife"), and his minor daughter, Kassce Mae-Kyle Keith ("the minor child"), contested the alleged will, arguing that it did not constitute a valid holographic will. The trial court granted the motion for summary judgment filed by the wife and the minor child, holding that the document under contest was not a last will and testament. The grandparents appeal, contending that summary judgment is not appropriate. We vacate the trial court's judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Howard L. Upchurch, Pikeville, Tennessee, for the appellants, Freddie A. Johnson and wife, Marie Johnson.

Landon Colvard, Jr., Crossville, Tennessee, for the appellee, Alexis Keith.

Lynne Swafford, Pikeville, Tennessee, for the appellee, Kassce Mae-Kyle Keith.

**OPINION**

I.

On August 22, 2000, the eighteen-year-old decedent was killed in a motorcycle accident. At the time of his death, the decedent was separated from his wife of less than a year, and the two were involved in divorce proceedings. The parties' minor child was almost eight months old.

The decedent had lived with the grandparents[1] since he was an infant. While he had resided with the wife for a short time during their marriage, the decedent was living with the grandparents at the time of his death.

Sometime after the decedent's death, the grandparents found two documents pertaining to the disposition of his estate. The first document, which was entirely in the handwriting of the decedent, was dated August 4, 2000, and stated, *in toto*, with grammatical errors, as follows:

> To who it may concern,
>
> I have been thinking a lot lately about things since mom got shot and I realize a body never knows about what might happen, so I am having a will typed up today, so if something happens to me, the stuff I have will go where I want it to which is to granny and pa, and they can let my brothers have some stuff if they wants to. This is not meant to worry anybody it is just something that needs doing.
>
> /s/ Donald L. Keith Jr.

The second document, entitled "Last Will and Testament" and also dated August 4, 2000, was entirely typewritten, with the exception of the decedent's signature. The typed document made the same disposition of property as set forth in the handwritten document; however, *the second document was not signed by any witnesses*. It is clear that the latter document was not executed with the formality required to make the document a valid will.

On November 22, 2000, the grandparents filed a petition for administration of the decedent's estate, averring that the handwritten document signed by the decedent was a holographic will and requesting that it be admitted to probate.[2] The wife filed a motion contesting the admission of the alleged holographic will to probate. Sometime thereafter, a guardian ad litem was appointed to represent the interests of the minor child. The wife and the minor child's guardian ad litem then filed a motion for summary judgment, contending that the handwritten document propounded by the grandparents is not a valid holographic will. The grandparents filed a response to the motion, along with several affidavits.

Following a hearing on May 17, 2002, the trial court granted the motion, finding that the document in question "states the intent to perform a future act; contains precatory language; contains

[1]They are his maternal grandparents.

[2]The grandparents submitted the affidavits of seemingly disinterested witnesses who stated that they were familiar with the decedent's handwriting, and that the handwritten document was indeed written and signed by the decedent. The wife and the minor child submitted no affidavits, nor did they present any proof to contradict the grandparents' affidavits.

no commands as to the disposition of the decedent's estate; and does not meet the legal requirements for a holographic will." This appeal followed.

## II.

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993) (citations omitted).

Summary judgment should be granted "when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995) (citation omitted). In *Evco v. Ross*, 528 S.W.2d 20 (Tenn. 1975), the Supreme Court observed as follows:

> Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. [It] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id.* at 25. Since a motion for summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 44-45 (Tenn. Ct. App. 1993).

## III.

The sole issue this court must decide is whether there is a genuine issue of material fact impacting the question of whether the handwritten document penned and signed by the decedent was signed by him with *animus testandi* – an intention that the document would operate as his will. We believe that there is such a genuine issue of material fact.

The Tennessee Supreme Court, in addressing will contests, has stated as follows:

> [T]he cardinal rule for interpreting and construing a will is to ascertain the intent of the testator and to give effect to that intent unless prohibited by law or public policy. Furthermore, such "intention is to be gathered from the scope and tenor of the whole will, . . . ."

*In re Estate of Vincent*, 98 S.W.3d 146, 150 (Tenn. 2003) (quoting *Podesta v. Podesta*, 28 Tenn. App. 282, 189 S.W.2d 413, 415 (1945)) (internal citations omitted); *see also* ***Winningham v. Winningham***, 966 S.W.2d 48, 50 (Tenn. 1998); ***Williams v. Estate of Williams***, 865 S.W.2d 3, 5-6 (Tenn. 1993); ***Wright v. Brandon***, 863 S.W.2d 400, 402 (Tenn. 1993). It is important to recognize, however, that these cases presuppose that the document in question has the requisite testamentary intent. In the instant case, that is precisely what we are attempting to determine – did the testator intend the handwritten document to be his will?

To answer this question, we turn to a 1957 decision of this Court:

> If the testimony with respect to the animus testandi be doubtful, all the facts and circumstances may be looked to, and it is for the [trier of fact] to determine from all the evidence, *intrinsic or extrinsic*, whether or not the testator intended the instrument to operate as his will. The statutory requirements must be accompanied by sufficient proof of intent which must be proven in a manner which conforms to applicable rules of evidence and procedure; otherwise the script cannot be accepted as a will.

*Scott v. Atkins*, 44 Tenn. App. 353, 314 S.W.2d 52, 56-57 (1957) (citations omitted) (emphasis added).

In examining the facts and circumstances surrounding the decedent's creation of the handwritten document, we note that the decedent and the wife had a failed marriage and were involved in divorce proceedings. Further, the evidence in the record reveals that the decedent had a very close relationship with the grandparents, as they had raised him practically from birth. Finally, the reference in the document to the recent shooting of the decedent's mother ties into the decedent's feelings of mortality and concern over the proper disposition of his estate. The papers in the record prompt a number of questions. What was the intention of the decedent when he drafted and signed the subject document? Did he intend it to be a will, if only for a short period of time? If this was not his intention, why did he draft and sign it?

In our view, these facts could cause reasonable minds to reach different conclusions as to the factual issue of whether the decedent, in drafting and signing the questioned document, intended the handwritten document to be his last will and testament, at least until he could execute a more formal disposition of his estate. This being the case, summary judgment is not appropriate. This critical factual issue should be decided by the trier of fact following a plenary trial.

IV.

The judgment of the trial court is vacated. This case is remanded to the trial court for further proceedings consistent with this opinion. Exercising our discretion, we tax the costs on appeal to the appellee, Alexis Keith.

_____
CHARLES D. SUSANO, JR., JUDGE