**Keen Estate**

*John Longstreth,* for accountant.

*Barbara Ann Duffy,* and *Fell, Spaulding, Goff &*

*Rubin,* for executor of estate of Harriet I. Roberts, deceased.

*Marvin I. Block* and *Michael Minkin,* for Commonwealth.

SHOYER, J., March 28, 1972.—Herbert I. Keen died July 12, 1931, leaving a will dated October 1, 1928, and two codicils thereto dated January 7, 1930, and October 29, 1930, whereby in Item Third of his will he gave his entire residuary estate to the Fidelity-Philadelphia Trust Company, in trust, to pay his daughter, Harriet Keen Roberts, $1,000 per annum, for life, out of income from a separate fund set aside for this purpose, with remainder in fee to such persons as she may appoint (Van Dusen, J., by adjudication dated June 27, 1932, charged this annuity upon the entire residue without prejudice to the appointee of the daughter), and the balance of the income to testator's wife, Elizabeth D. Keen, for life, and, at her death, to pay one-half of the principal as she may appoint and to pay the income from remaining one-half to Harriet Keen Roberts, for life, with remainder of such one-half share thereof to such person or persons as said daughter, Harriet Keen Roberts, may appoint, and in default of appointment the principal to go to such persons as would take the same under the Intestate Laws of Pennsylvania, if testator had died intestate at the time fixed for distribution.

Elizabeth D. Keen died August 7, 1957, and by adjudication of Lefever, J., dated November 12, 1963, one-half of the principal was awarded outright to her daughter, Harriet Keen Roberts, as appointed by the will of Elizabeth D. Keen, and the other half of testator's residuary estate was awarded back to the accountant in trust for testator's daughter, Harriet.

Testator's daughter, Harriet I. Roberts, formerly

Harriet I. Keen, died January 26, 1971, testate, while domiciled in the State of California. Charles A. Stewart, executor of her will, has appeared by counsel in this court and has made claim that by paragraph Sixteenth of her will, the donee blended her individual estate with the estate over which she had a general power of appointment under her father's will, so that the residuary estate is available to make up any deficit in the specific legacies and bequests and taxes thereon as directed by her will in the disposition of her personal estate. In counsel's brief, it is alleged that Harriet I. Roberts made specific pecuniary bequests totaling $33,000. Included in this total is payment of a debt due and owing on certain real property belonging to Mrs. Sigler. It is further alleged that the cash, stocks and bonds available to pay bequests, taxes, expenses of administration and attorney fees amounted to only $68,755.15, so that for payment of the bequests, taxes, etc., the total cash necessary to settle the estate amounts to $84,360, leaving a cash deficit of $15,604.85.

The residuary clause of the will of Harriet I. Roberts reads as follows:

"SIXTEENTH: All the rest, residue and remainder of my estate, including the power of appointment over certain assets given to me by the Will of my late father, HERBERT I. KEEN, and any other powers of appointment of which I have control, I give, devise and bequeath in equal shares to the following persons, with the exception that DOROTHY TAUGHER and DONALD F. TAUGHER, M. D., 58 Via Castenada, Monterey, California, shall each receive three (3) shares, to wit:" (here follow the names of 28 different individuals in 28 separate paragraphs).

In other portions of her will, Harriet I. Roberts makes reference to "my residuary estate," or to "the

residue of my estate." Thus, paragraph Fourth of the will of Harriet I. Roberts, reads in part as follows:

"FOURTH. To BROOKS CLEMENT I give and bequeath all of my personal property, absolutely (with the exception of the *specific bequests* set out below), any inheritance taxes thereon to be paid out of *my residuary estate*. . . Any expenses incurred by him in carrying out my requests for distribution of my personal property such as packing and shipping shall be reimbursed to him out of *the residue of my estate.*

. . .

"FIFTEENTH. I hereby forgive any debts due and owing to me by anyone at the date of my death, and, in addition thereto, any sums still due and owing on that certain real property known as 38 Oliver Road, Carmel, California, my interest in which I have heretofore given to Mrs. Leoni Sigler, that said debt shall be paid out of the *residue of* my estate so that thereafter MRS. LEONI SIGLER shall then own said property free and clear of said debt.

. . .

"SEVENTEENTH: The specific cash bequests set out above shall be given free and clear of any tax. Said tax to be payable out of *the residue of my estate* prior to the distribution thereof to the residuary legatees." (Italic supplied.)

We note at the outset that donee's California domicile raises a conflict of laws question. The Pennsylvania authorities are numerous, however, that in such circumstances the law of the donor's domicile must govern the exercise of the power by a foreign donee: Windolph Trust, 374 Pa. 81, 84 (1953); Dull Estate, 33 D. & C. 2d 157 (1964); Cattell Estate, 16 D. & C. 2d 91, 9 Fiduc. Rep. 129 (1959); and see cases cited in 5 Hunter, O. C. Commonplace Book, p. 89, §14.

The Pennsylvania authorities recognize that blending is a question to be determined by the language of the donee's will. Blending may be total or partial: Anderson Estate, 373 Pa. 294, 296, 297 (1953). There is no direction by Mrs. Roberts to her executor to pay her general creditors and the absence of such provision indicates that testatrix did not intend the appointive estate to be used for such purpose: Hagen's Estate, 285 Pa. 326, 329 (1926). Here, I find in paragraph Sixteenth a definite intention to blend for a limited purpose. Paragraph Sixteenth is obviously a residuary clause and the 28 individual legatees mentioned in that paragraph are the "residuary legatees" referred to in paragraph Seventeenth. The "specific cash bequests" to be given free of tax are, as we shall see later, the bequests set forth in paragraphs Fifth through Fifteenth.

We note that in the first 15 paragraphs of her will the donee has attempted to make distributions out of her individual estate. When she refers to "my residuary estate" in paragraph Fourth of her will, a question arises as to whether or not she is referring to the residue of her individual estate or the blended estates as mentioned in her residuary clause. I hold to the latter construction. In the last sentence of paragraph Fourth, where reference is made to "the residue of my estate," it seems more certain that she is referring to the residue of her individual estate. Again, in paragraph Fifteenth, reference is made "that said debt shall be paid out of the residue of my estate." This again seems to refer to her individual estate.

The "specific cash bequests" to which reference is made in paragraph Seventeenth of her will are evidently the items set forth in Items Fifth to Fifteenth, inclusive, and aggregate $33,000. "Pecuniary bequests" would have been a more fortunate choice of

language. I do believe, however, that the adjective "specific" was used in reference to the "individual legatees" and not with reference to the type of property which testatrix described as "cash." In testamentary nomenclature in Pennsylvania, "specific" and "general" are antonymous classifications of the property which is the subject of the particular gift.

In paragraph Seventeenth of her will she has directed that these specific cash bequests shall be given free and clear of any tax which is "to be payable out of the residue of my estate prior to the distribution thereof to the residuary legatees." Here, the donee has clearly expressed her intention that the assets, individual and appointive, referred to in the residuary clause shall be used to pay the taxes on the gifts made from her individual estate before any effort is made to divide the balance among the 28 legatees named in paragraph Sixteenth of her will.

While one might hesitate to hold that "residue of my estate" in paragraph Seventeenth refers to other than testatrix' individual estate, yet the fact remains that in paragraph Sixteenth testatrix has blended her appointive estate with *any or no balance* of her individual estate and has made it clear that the remainder to be distributed to the Sixteenth paragraph legatees is to be determined *after* payment of taxes to the benefit of those taking from her individual estate. Inevitably, *all* taxes on *all* legacies must be paid out of one or both of the two estates which testatrix has blended in her residuary clause.

As for any possible deficiency to pay the legacies in paragraphs Fifth to Fifteenth, the law in Pennsylvania, both case law and statute, asserts that the appointive estate should be utilized to the extent necessary to fulfill the testamentary bequests. It was so held in South's Estate, 248 Pa. 165 (1915), where the

donee's will bequeathed legacies of $10,000 and donee left no estate except a fund of $10,000 over which he had power of appointment. His will contained no residuary clause and made no reference to either his power to appoint or the fund. Our Supreme Court said (page 168):

"The fact that there is nothing with which to pay the pecuniary legacies in the will of George S. Robb, unless the fund, which is the subject of the power, is drawn upon, justifies a strong presumption that he intended to exercise his power of appointment."

In approval of this holding, the legislature, upon the recommendation of the Joint State Government Commission, when it adopted the Wills Act of 1947, reenacted the essential provisions of the Act of 1879 (embodied ipsissimis verbis in section 11 of the Wills Act of 1919), and added a new sentence (Act of April 24, 1947, P. L. 89, sec. 14(14), 20 PS §180.14(14), to the effect that ". . . a general pecuniary legacy, when the assets of the individual estate of the testator are not sufficient for its payment, shall, to the extent necessary to make possible the payment of the legacy, be construed to include any estate which the testator shall have power to appoint in any manner he shall think proper, and shall to such extent operate as an execution of such power." This statute, which was in force prior to the death of the donee, controls the exercise of her power of appointment even though she was domiciled in another State where her will was probated: Barton Trust, 348 Pa. 279 (1944).

In Wilson's Estate, 57 D. & C. 612 (1946), this court held that a brief holographic will making three pecuniary bequests totalling $8,000, when the donee's personal estate amounted to only $4,800 at the time the will was executed, operated as a pro tanto exercise of the general testamentary power.

In Jackson's Estate, 337 Pa. 561, 564 (1940), our Supreme Court said: "In deciding whether or not there is a blending of estates in cases like the one before us, there is judicial unanimity in holding that it is entirely 'a question of the testator's intention.' Since intention is a state of mind it, in the absence of an unequivocal expression of intent, must be determined by inference from relevant attendant circumstances. Since the significance of circumstances impress different minds differently, we almost always have in these cases a conflict of opinion as to what a testator's intent was."

There, testatrix had the power of appointment over two trust estates, one of which she had created out of her own property. Her will was drawn by a layman, and it provided for pecuniary legacies greatly in excess of her individual estate at the time it was drawn. Then her will went on to dispose of the residue "of my estate . . . or over which I may have power of disposition by will." Our Supreme Court held that under all the circumstances testatrix intended to blend her individual estate and the appointed estate so as to create a common fund out of which all bequests made by her should be paid.

The situation here is different from that in Jackson in that the individual estate of the donee was almost sufficient to take care of the individual pecuniary legacies which were clearly payable out of her individual estate. Really, the only question before us is the use of the appointive estate to take care of the inheritance taxes, and the individual estate legacies. And this seems to be clearly indicated by the provisions of paragraph Seventeenth. In Jackson Estate, the beneficiaries of the appointive estate were contesting the use of any part of the appointive estate to pay for the legacies payable out of the individual estate. Our Supreme Court held that the intention to blend, while

there was not a blending for the purpose of paying creditors, was nevertheless sufficient to aid in making up the deficiency for the benefit of the legatees of the individual estate.

In Shipley's Estate (No. 2), 337 Pa. 580 (1940), decided on the same day as Jackson's Estate by our Supreme Court, the alleged blending clause read as follows, page 583:

"All the rest, residue and remainder of my property and estate, real, personal and mixed, of whatsoever kind and description and wheresoever situate, including all property and estate over which I may have any testamentary power of appointment, I direct shall be divided by my Executor into three equal parts or shares, . . . as follows. . ."

Our Supreme Court, in holding that there was no blending in Shipley, stressed the insertion of the adjective "all" in the phrase "including all property and estate over which I may have any testamentary power of appointment." It will be noted in the will of Harriet I. Roberts, there is no such adjective "all' in the blending clause. I find nowhere in her will any expression which would preclude the application of the above-quoted statute.

Counsel for the donee's executor requests that the entire appointive estate be distributed to the executor. This we will not do. Following our usual practice where blending is less than total, I will award so much to the executor in California as will be needed to pay in full the legacies in paragraphs Fifth to Fifteenth, inclusive, also the taxes thereon, and the balance of the appointive estate will be distributed directly by the accountant to the beneficiaries named in paragraph Sixteenth: Clay's Estate, 43 D. & C. 266 (1941).

A problem arises with regard to one legacy, that to Mme. Gabrielle Yersin Bolobaky, of France. She could

not be found at the address listed in Mrs. Roberts' will. The California executor retained an heir searcher, presumably on a contingency basis. The searcher reports that he has located Mme. Bolobaky but until he completes an agreement with her as to his compensation, he will not disclose to the legatee the name of her beneficiary, nor the legatee's address to the executor. The searcher is in California and this court has no means of compelling him to disclose his information. Under these circumstances, I will award this legatee's share to the Commonwealth under section 1314 of Fiscal Code of April 9, 1929, P. L. 343, art. XIII, 72 PS §1314. Hopefully, the executor will be successful in prying this information out of the heir-hunter in one way or another in the near future. Application may then be made by the missing legatee to recover her residuary share from the Commonwealth.

And now, March 28, 1972, the account is confirmed nisi.