HUTCHINSON *v.* GILBERT.

(*Nashville.* March 1st, 1888.)

WILLS. *Construction. Legacy. Charge on realty.*

> Where a testatrix, after directing payment of her debts and funeral expenses, gives a *general pecuniary legacy;* and then disposes of the *residue* of her property, *real* and personal, in one mass, she indicates her intention to charge her *real* as well as her personal estate with such *legacy.*

> Cases cited and approved: 16 How., 1; 131 Mass., 20; 83 Pa. St., 348; 63 N. C., 645, 649; 54 Miss., 235; 24 N. J. Eq., 579.

FROM ROBERTSON.

Appeal from the Chancery Court of Robertson County. GEORGE E. SEAY, Ch.

J. W. JUDD for Hutchinson.

JOHN E. & A. E. GARNER for Gilbert.

FOLKES, J. This is a bill filed by the administrator for the purpose of obtaining a construction of the will of Sallie C. Pack, deceased.

After providing, in the first clause, for the payment of funeral expenses and debts out of the first moneys that may come into the hands of her executor or administrator, the will continues:

Second clause: "I desire that S. F. Austin be paid one thousand dollars to compensate her for the amount that J. G. Gilbert charged her for board while she lived with him."

Third clause: "I desire that the remainder of my property be equally divided between my daughter, M. S. Gilbert, and S. F. Austin."

The fourth and fifth clauses need no construction, and contain nothing necessary to the interpretation of the clauses sought to be construed.

The sixth will be noticed later.

The personal estate amounts to about $500, which will be nearly, if not quite, consumed in the payment of debts, funeral expenses, and costs of administration. The testatrix owned at the time of her death about 120 acres of land, which, with the $500 worth of personalty, constituted her entire estate.

The will is not dated, and there is nothing in the record to show that there was any difference in the condition of the estate between the making of the will and the death of the testatrix; nor is there any extrinsic proof which tends to cast any light upon the intention of the maker of the will to which we might look to aid in its construction.

So that with the facts stated in the pleadings as to the value of the personal estate and the number of acres of land, and the further fact that of the two persons named in the residuary clause of the will, M. S. Gilbert is the daughter,

and S. F. Austin the granddaughter, of testatrix, the latter being the step-daughter of J. G. Gilbert, named in second clause, and the face of the will itself, we are called upon to determine whether the one thousand dollar legacy is a charge upon the realty bequeathed in the residuary clause.

To charge the realty with the payment of a pecuniary legacy, the *intention* of the testator to do so must appear. Where the charge is express there is usually little room for doubt, although there are to be found in the books quite a contrariety of opinion as to what language will amount to an express charge, furnishing illustration of the various canons of construction and interpretation growing out of the terms employed in each individual case.

Where the charge is to be *implied* there is more difficulty. Here, as in other matters relating to the construction of wills, the *intention* is to be ascertained, and the purpose to charge may be implied from the general dispositions of the will—from the mode in which the real and personal property are donated.

While the intention to charge may be implied, as well settled by both the English and American cases, they are by no means agreed as to the effect produced by particular forms or manner of disposition.

Under the English decisions, a number of general rules have been definitely settled, as follows:

" Where a testator directs in terms, however

general, that his debts or legacies shall be paid,
not saying *by his executors*, and afterward devises
his real estate, the devisees take the land devised,
charged with the payment; and it is not necessary
that the direction to pay should be accompanied
with such words as 'in the first place,' '*imprimis,*'
and the like, although in some of the early cases
they were treated as important."

The same result follows when executors are di-
rected to pay the debts or legacies, and real estate
is devised to them either personally or as executors;
in either case the land so devised is charged. But
where executors are simply directed to pay debts
or legacies, *and no real estate is devised to them,*
the lands devised to others are not charged, since
it is always the duty of the executors to pay
debts and legacies out of the personalty.

Where legacies are given generally, and this is
followed by a residuary devise of the rest or resi-
due of the real and personal property as one mass,
the legacies are charged upon this residue of the
real as well as the personal estate. Such a gen-
eral charge, however, of legacies on the residue of
real and personal property, does not charge prop-
erty which is *specifically* devised or bequeathed;
but it is otherwise where *both debts and legacies*
are thus charged.

Where legacies are generally given, and this is
followed by a direction to convert the real estate,
and that its proceeds shall be deemed a part of
the residuary personal estate, the legacies are there-

by charged on the entire fund, notwithstanding the residue may be specifically bequeathed; and finally, a devise of real estate, followed by a bequest of personal estate, *" after payment of debts,* operates to charge the debt on the real as well as the personal property." See note 1 to § 1247, Pomeroy's Eq. Jur., where the English cases, sustaining the above rules, are collected.

Mr. Pomeroy says these rules are based upon three main considerations, or motives of interpretation:

" *First*—That a gift of personal property in terms, *after* the payment of debts or legacies, indicates that the debts or legacies are to be paid out of the real as well as personal estate.

" *Second*—That a direction in any form *to a devisee* to pay debts or legacies, indicates an intention that the payment must or may be made out of the real estate devised to him.

" *Third*—That a gift of legacies or a direction to pay debts, followed by a gift *of the residue* of the real and personal estate, indicates an intention that the former are to be paid out of the testator's real as well as personal estate, *since otherwise there could not be any residue of the real estate."*

In the American decisions there has been no uniformity in the adoption of general canons of interpretation, such as are formulated from the English cases.

In some of the States none of the general rules as stated are followed; in others, some are ac-

cepted and some rejected, while none of the States, so far as we know, have adopted them all.

The Federal Courts, and some of the States, have fully adopted the English doctrine concerning the gift of the residue of real and personal property in one mass, made after a bequest of a general pecuniary legacy.

*Lewis* v. *Darling*, 16 How. (U. S.), 1; *Smith* v. *Fellows*, 131 Mass., 20; *Davis' Appeal*, 83 Pa. St., 348; *Robinson* v. *McIver*, 63 N. C., 645–649; *Knotts* v. *Bailey*, 54 Miss., 235; *Corwine* v. *Corwine*, 24 N. J. Eq., 579.

We are content to place ourselves in line with the cases above cited. The rule of construction that a gift or bequest of a money legacy, followed by a gift *of the residue* of the real and personal estate, indicates an intention that the former is to be paid out of the testator's real estate, if necessary to do so after paying debts, and will be a charge upon such real estate, commends itself to us, not only on account of the high authority therefor, but because it addresses itself to our judgment as founded upon the "rule of rules" in relation to wills, which makes the intention of the testator the corner-stone upon which all construction must rest.

Applying this rule to the case at bar, it cannot be doubted but that the testatrix intended her granddaughter to have the $1,000 paid to her at all hazards. She says why she wants it paid— that is, to compensate her for the amount that

her step-father had charged her for board, and it was that portion of her estate which might *remain* after paying the debts, and this legacy, which she desired to be equally divided between her daughter, M. S. Gilbert (the wife of J. R. Gilbert), and her granddaughter, S. F. Austin.

Her debts, while not sufficient to consume entirely the personalty, would leave but a very small sum to go as the legacy; and unless she had intended to charge her realty as well as personalty with the payment of the legacy, why give the legacy of $1,000, and why devise the *"remainder"* of her property to the parties named? If she had intended the 120 acres of land to have been equally divided between her daughter and granddaughter, she would most naturally have said so in the will. It is manifest that it was not her purpose to divide the 120 acres equally, but so much thereof as might *remain* after the payment of the legacy.

Some of the States that do not follow the rule here stated, where the legacy is to a stranger or a collateral kinsman, have adopted it where the legacy is to a child or grandchild, and the personalty is insufficient.

So, from any point of view, it is to our mind clear that it was the intention here to charge the realty with the payment of the legacy in question.

There is nothing in the sixth clause showing a contrary intent. The provision therein contained that the land "is not to be sold while my daugh-

Hutchinson *v.* Gilbert.

ter, M. S. Gilbert, or either of her daughters, shall live," manifestly relates to such portion of the land as may *remain* after the payment of debts and the legacy, it being her purpose to prevent sale of *such share* as might go to her daughter and granddaughter, so as to secure a living to them, and protect them doubtless from any sale of their respective interests that might be induced by their husbands.

The fourth and fifth clauses provide for limitations over; and in doing so use language, in describing the shares that the two residuary beneficiaries are to take, which confirms our view of the intention of the testatrix, that she had reference always to the share that each would get after the primary object was satisfied by the payment of the legacy and debts.

Instead of referring to any particular land or lands which make up the 120 acres, or instead of speaking of their respective half of such lands, these two clauses designate what they take under the will as "such portion of my property as comes to their possession," giving no other description of it, and evidently referring to such portion as may come to their possession after the debts and legacy are satisfied.

The decree of the Chancellor will be affirmed. The cost of the Court below will be paid by the administrator, and the cost of this Court will be paid by the appellants and the surety on their appeal bond.