## Shipley's Estate (No. 2).

Argued January 9, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

*Allen S. Olmsted, 2nd,* for appellants.

*Thomas Raeburn White,* with him *Thomas Raeburn White, Jr., Howard F. Troutman* and *White & Staples* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 25, 1940:

This case arises out of the Susan G. Shipley Estate, as does the case in which we handed down an opinion today and which appears on page 571 of this volume. The question before us involves the interpretation of the residuary clause of the will of Susan G. Shipley. Her will, dated in 1927, provided for the payment of inheritance taxes out of her general estate so that each bequest might be free and clear of all taxes. It then provided for sixteen bequests totaling $35,900, of which one bequest of $500 lapsed. The present appellants represent four of these legacies totaling $26,500. The will divided the residue of her estate, including her appointive estate, into three equal parts, bequeathed to Mrs. Allinson, Mrs. White and in trust for the Troth family. The Provident Trust Company was made executor. In the fall of 1931 the Provident Trust Company filed its account in the estate of Samuel Shipley. Susan G. Ship-

ley's *residuary legatees,* who recited that they were the persons in interest, approved the account. Upon advice of the attorney for the Samuel Shipley Estate, the Trust Company gave no notice of the filing of this account to the *pecuniary legatees* of Susan Shipley. The Trust Company, as executor of the latter estate, filed no exceptions to the Samuel Shipley account and took no steps to have the fund awarded to it as Susan Shipley's executor. No exceptions were filed to that account. There was no adjudication of the account and no award. The Trust Company subsequently paid the fund to the residuary legatees. By the time the account in the Susan Shipley Estate was filed, two of the legatees, namely: Thomas J. Richards and Elizabeth Winn, had died. Thomas Richards, who had a $7,500 legacy from the Susan G. Shipley Estate, bequeathed his interest to his daughters, Elizabeth Richards and Winifrede Devan. Elizabeth Winn, who also had a $7,500 legacy, assigned the legacy, during her lifetime, to Miss Richards and Mrs. Devan. Catharine Cox Miles, legatee of $4,000 and Catharine E. B. Cox, legatee of $7,500 are still living. Miss Richards and Mrs. Devan excepted to the failure of the Trust Company *to include the appointive estate in its account.* (All four of the exceptants excepted to the items in the account taking credit for losses on the sale of securities and also to accountant's commissions. As to this, see the above opinion in 337 Pa. 571.)

The court referred the exceptions to J. Paul MacElree, Esq., as auditor. He dismissed the exceptions relating to the appointive estate, which was based on the interpretation of Susan G. Shipley's will. After argument on these exceptions the court below sustained the findings of the auditor as to the interpretation of the will.

Since there was not sufficient in the testatrix's individual estate to pay the legacies she provided for, the excepting legatees demand that a fund belonging to the father of testatrix, over which fund she had power of

appointment, should be made available to meet the deficiency. Whether or not the demand shall be acceded to depends on the interpretation of the residuary clause of testatrix's will. Preceding the residuary clause there are provisions as to the payment of debts, funeral expenses, taxes and pecuniary legacies out of testatrix's "general estate, so that each bequest, legacy, trust, or benefaction given or provided for shall be free and clear of all taxes." The fourth paragraph of the will, i. e., the residuary clause reads as follows: "All the rest, residue and remainder of my property and estate, real, personal and mixed, of whatsoever kind and description and wheresoever situate, including all property and estate over which I may have any testamentary power of appointment, I direct shall be divided by my Executor into three equal parts or shares and I give, devise and bequeath said equal parts or shares, as follows: (a) . . . unto my sister, Mary M. P. Allinson. . . . (b) . . . to my sister, Agnes Dorothy White . . . (c) And . . . the Provident Trust Company . . . in trust" etc.

The auditor found that the testatrix did not blend in the paragraph quoted her appointive estate with her individual or general estate for all purposes or even for the benefit of the pecuniary legacies. The court below after argument upon exceptions to the auditor's report reached the same conclusion. With this we agree.

We find no warrant whatever for accepting the argument of appellants that the phrase "general estate" as used in the first paragraph of the will meant something other than the *non*appointive estate. The phrase "general estate" is customarily used as meaning the entire estate held by a person in his individual capacity. If he holds property in some other capacity, such as, e. g., a trustee, or if he has the testamentary power to dispose of some other property by appointment, that other property is *not* a part of his "general estate." In *Hagen's Est.*, 285 Pa. 326, 328, 132 A. 175, the phrase "general estate" was used as distinguishing a testator's individual

estate from an estate from which, pursuant to his father's will, he derived an income and over which he was given a "power of appointment."

As to the residuary clause, we think that the meaning of its contained phrase, "including all property and estate over which I may have testamentary power of appointment," is clear. "Including" means comprehending or taking in. As the *subject* of the clause was the "rest, residue and remainder" of what testatrix had testamentary control over, the phrase beginning with the word "including" was in testatrix's mind "tied to" the thing she was thinking and writing about, to wit: *what was left for her to dispose of.* She in effect said: "Whatever else I have power to dispose of, and that takes in [i. e., includes] the estate over which I have appointive power, I dispose of as follows." When testatrix wrote or signed the fourth paragraph of her will she said in unmistakable language that her two sisters, Mrs. Allinson and Mrs. White and the Provident Trust Company should be given all "the rest, residue and remainder" of the estate and that such rest, residue and remainder *should include,* that is *take in, all* property over which she had power of appointment. Since *all* of *such* property went where she directed the residue of *her* property to go, there can be *none* of *that property* to go where appellants wish it to go.

Appellants argue that the clause beginning with the word "including" modifies the word "estate" rather than the word "residue." They say: "Under the ordinary rule of English syntax an adjective or a prepositional clause modifies the nearest noun rather than a more remote noun." The answer to that is that the "including" clause is neither "an adjective" nor "a prepositional clause" and even if it was, a mere technical rule of syntax cannot be used to destroy a meaning of a clause when that meaning is obvious from a consideration of the subject of the clause and its manifest purpose. When a person makes a will he naturally thinks first of his

individual estate and of how he will dispose of it. This is what Miss Shipley did. She made many bequests and apparently thought that her individual estate was ample to meet them. As a matter of fact, it was *at that time*. Having thus disposed of a large part of her estate, her mind then turned to the subject of the "remainder" or "residue" of the property which she still had to dispose of. Not her estate as it was before the legacies were provided for, but *what she still had to dispose of by will* was the subject she proceeded to treat when she wrote the residuary clause. When in the last half of that clause she "included all property" she had power of appointment over, she was including it in the *rest, residue and remainder* of property undisposed of, up to that point, and not in all the property she had to dispose of *when she began her will*.

A clause or phrase does not necessarily relate to the nearest preceding noun. *That* noun may be, as here, only a part of a phrase qualifying the sentence's controlling noun. In paragraph 4, Miss Shipley directed that something be divided, and *that* was the residue of her estate. She could have expressed it: "my estate's residue." The only participial clause in that paragraph begins with the verbal participle "including" and it pivots on the paragraph's dominant nouns "rest, residue and remainder" and not on the two nouns of the qualifying prepositional phrase.

The significance of the word "all" as used between "including" and "property and estate over which I may have testamentary power of appointment" cannot be disregarded. If testatrix meant the "including" phrase to pivot on the words "property and estate" in the prepositional phrase, the word "all" would serve no purpose, for if the phrase so pivoted, it would indicate that testatrix had "blended" her estate before taking up the subject-matter of the fourth clause. But by using the word "all," as it is used after the word "including," testatrix, we think, made it clear that *up to that point* no

provision in her will affected the estate over which she had appointive power. It was all intact and was to be *all* included in the residue of her estate whose division she was in that fourth paragraph directing. The word "all" as used *at the beginning* of the paragraph was an emphatic way of calling attention to the fact that *every particle* of the residue of the property testatrix had testamentary power over was about to be disposed of. *In the fourth line* of the paragraph she makes it equally emphatic by the use of the same word "all" that in this residue of property now being testamentarily disposed of by her, she "included" *every particle* of the property over which she possessed a testamentary power of appointment. If *any* part of *that* property had already been disposed of by the specific bequests already made in the will, the residue she was then disposing of could not possibly have included *all* the property she had appointive power over. If the two properties of different origins but over both of which she had sole testamentary power were *intended* by her as she made her will to be "blended" for all testamentary purposes, there would be absolutely no point to an inclusion by her of *all* the property over which she had the power of appointment, in what she termed "all the rest, residue and remainder of my property and estate."

It is a canon in the interpretation of wills which do not unmistakably disclose a testator's intention that "the law will impute to a testator's words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice." (See opinion in *Jackson's Estate*, 337 Pa. 561.) Applying this canon to the clause now before us, we reach the same conclusion we reached in interpreting the language of the clause itself. It seems "agreeable to reason and justice" that the testatrix would provide for her collateral relatives, friends and charities out of her *individual* estate, and that she would direct that such portion of her father's estate over which she had power of ap-

pointment should go to the descendants of her father exactly as he himself as a testator had directed in distributing that portion of his estate which he completely disposed of.

We agree with the court below that the executor cannot be surcharged for failing to include as part of the assets of the Susan G. Shipley Estate that portion of Samuel R. Shipley's Estate over which the testatrix had a power of appointment. The executor's action was the result not of inattentiveness but of careful consideration and the advice of competent counsel.

The decree of the court below is affirmed at appellants' cost.