Nashville Trust Co. *v.* Grimes *et al.*

(*Nashville,* December Term, 1942.)

Opinion filed January 30, 1943.

STOUT & PORTER, of Clarksville, for appellant Gilbert Lowe.

JOSEPH MARTIN and MARTIN & COCHRAN, all of Nashville, for appellee Nashville Trust Co., executor.

FARMER, DENNEY & LEFTWICH and DODSON BATSON, all of Nashville, for appellees Mrs. Alice K. Grimes et al.

W. R. FAIN, JR., and COLLIER GOODLETT, both of Clarksville, for appellees heirs of A. M. Phipps.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Construction of the will of H. T. Grimes is sought. The will was executed in March, 1932. Grimes died in July, 1938. Meanwhile, June 1, 1932, he had married and his surviving widow dissented from the will and has been awarded $3,000 as her year's support, $750 for her personalty exemption, and a dower interest in certain real estate.

The validity of this will was sustained by the Court in *Grimes et al.* v. *Nashville Trust Co.*, 176 Tenn., 366, 141 S. W. (2d), 890, in which case, while finding that the testator had apparently forgotten its existence, or was under the impression that it had been destroyed, it was held that it had not been bindingly revoked.

The need now for construction grows out of (1) the subsequent marriage and the widow's dissent, and (2) changed conditions in the testator's estate, due chiefly to the investment in real estate of a large proportion of the testator's estate which, when the will was executed, was in cash. Stating these changes more exactly, it

appears that when the will was executed the estate consisted of the following:

(1) Cash on deposit in Bank of approximately $33,000.

(2) A house and lot at 303 Treutland Street, Nashville, Tennessee.

(3) A 120 acre tract of land on the westerly side of the Dickerson Road in Davidson County, Tennessee.

At the time of the death of the decedent on July 20, 1938, his estate consisted of the following items:

(1) Cash in bank, $7,380.37; other personalty, made up of live stock and farm equipment and accrued rents, $4,193.29, a total of $11,573.66.

(2) A 120 acre tract of land on the westerly side of the Dickerson Road in Davidson County, which he owned when the will was executed.

(3) A 207 acre tract of land on the westerly side of Dickerson Road, deeded to the testator on May 4, 1933.

(4) A 216 acre tract of land on the easterly side of the Brick Church Pike in Davidson County, deeded to the testator on May 4, 1933.

The will provided first for payment of debts and burial expenses. Item Three reads: "I direct that all Inheritance and Estate Taxes be paid out of my general estate." And Item Four, particularly pertinent for consideration at this time, reads:

"I give and devise certain real estate as follows:

"Property at 303 Treutland Street, in Nashville, Tennessee, to A. M. Phipps,

"My property on the Dickerson Road near Nashville, Tennessee, to my grand-nephew, Gilbert Lowe; and

"My lot in Spring Hill Cemetery near Nashville, Tennessee, to my niece, Mrs. Elsie Lowe."

In Item Five the testator gives and bequeaths a total of $19,500.00, "to be paid by my executor in cash," to

fifteen different named beneficiaries, in amounts of from $500 to $2,500, most of them described as relatives or connections by marriage. To one he gives $5,000, to another $2,500, to eleven $1,000 each and to two $500 each.

By Item Six he gives in trust to Nashville and American Trust Company, for his grandnephew, Gilbert Lowe, to whom he had devised, in Item Four, his "property on Dickerson Road," the sum of $10,000, to be used for his education and any balance to be paid over to him upon his majority.

Item Seven reads:.

"All the rest and residue of my property of every kind and wheresoever situated, I desire to have distributed among my heirs at law the same as though I had died intestate."

The concluding item names Nashville and American Trust Company (now complainant Nashville Trust Company) as executor, with full powers of sale.

The bill was filed by the Trust Company-executor and all interested parties were brought before the Court. The cause was heard on a stipulation of facts and the decree of the Chancellor was appealed from by Gilbert Lowe only, the beneficiary to whom the will devised "certain real estate," to-wit, "My property on the Dickerson Road near Nashville, Tennessee," which the stipulation shows consisted, at the time of the making of the will, of 120 acres of farming land; and, also, bequeathed ten thousand dollars, to be held in trust for his benefit, he being then a minor. This favored grandnephew assigns a number of errors in this Court to the decree below, but on the brief of counsel, pages 6 and 7, learned counsel summarizes appellants' complaint stating it in the form of three questions, namely: (1) Does the lan-

guage "general estate" in Item Three of the will include both personalty and realty? (2) Does Gilbert Lowe take only the 120 acre tract of land on Dickerson Road the testator owned when he made this will, or does he take also the 107 acres on Dickerson Road subsequently acquired and owned at the time of his death? (3) Is the residuary clause, Item Seven of the will, a valid testamentary disposition?

██ ██ We are satisfied with the disposition the Chancellor makes of the first of these queries. We quote him:

"The word 'estate' when unqualified is generally construed to embrace every description of property, and it is the conclusion of the Court, that the testator intended by the use of the term 'general estate' in his will, ·to include realty, and therefore intended to charge the payment of Inheritance and State taxes to the undevised realty and personalty.

"In the case of *Latta* v. *Brown,* 96 Tenn., 343 [34 S. W., 417, 31 A. L. R., 840], the Court in discussing compensation of disappointed devisees, uses the language, 'There being no general or residuary legacy.'

"See *Gourley* v. *Thompson,* 34 Tenn. (2 Sneed), 387; *Sharp* v. [*Cincinnati, N. O. & T. P.*] *Railway Co.,* 133 Tenn., 1 [179 S. W., 375, Ann. Cas., 1917C, 1212]; and authorities cited in 69 C. J., 372."

And see 69 C. J., pp. 981, 1173, 1174, 1176; *Hutchinson* v. *Gilbert,* 86 Tenn., 464, 7 S. W., 126; Pritchard on Wills, Sec. 470; [*Rinehart* v. *Rinehart,* 98 W. Va., 93, 126 S. E., 402], 42 A. L. R., 653.

What we conceive to be the substantial and mainly controverted issue on this appeal is presented by the second query: Does Gilbert Lowe take under Item Four not only the property on Dickerson Road owned by the

testator when he made the will, but also an additional tract of 107 acres, also located on Dickerson Road, subsequently acquired?

The Chancellor looked to the language of the will, in the light of all the relative facts existing at the time of its execution, and the changes which took place before the death of the testator in his personal relations and the investment of his estate, and found that the intention of the testator was plain; that the property passing to Gilbert Lowe was that and that only definitely designated in the will; that the testator could not possibly have intended when he made this will to include in the description "My property on the Dickerson Road" property which he did not then own, and could not have foreseen subsequent ownership. We think the Chancellor properly followed the rule that for the purpose of construction of the language describing property devised, the will must be considered as of the time of its execution. As was well said by Chancellor COOPER (*Johnson* v. *Johnson*, 1 Tenn. Ch., 621) : "The plainest dictate of common sense would be, it seems to me, to seek the subject-matter of devise, and the object of benefit at the date of the will. And so are the authorities." So, in 28 R. C. L., Sec. 196, it is said: "But for purposes of construction a will must be considered in reference to the circumstances which existed at the time of its execution."

Appellant Lowe apparently relies chiefly on Code, Section 8133, which provides :

"A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator; and shall convey all the real estate belonging to him, or in which he had any interest at his

decease, unless a contrary intention appear by its words and context."

The argument is that, if the will is construed "to speak and take effect as if it had been executed immediately before the death of the testator," then Lowe would take the 207 acre tract in addition to the 120 acre tract, both fronting on the Dickerson Road, under the language in Item Four, wherein the testator devised to him "my property on the Dickerson Road."

■ This argument fails to give due consideration to the concluding language of the statute, "unless a contrary intention appear by its words and context." And, as we have seen, the facts and surrounding circumstances may be looked to in arriving at this "intention." This principle was aptly stated by Chief Justice NICHOLSON in his opinion in *Rodgers* v. *Rodgers*, 53 Tenn (6 Heisk.), 489, as follows:

"The result of all the authorities may be stated to be, that notwithstanding all the nice distinctions which have been taken by the courts on the subject, we must come at last to the plain common sense question, what was the intention of the testator, as indicated by his language, viewed in the light of surrounding circumstances."

■ In *Nichols* v. *Todd,* 20 Tenn. App., 564, 570, 101 S. W. (2d), 486, 488 (*certiorari* denied by this Court), Presiding Judge FAW made the following comments on the statute under consideration:

"Section 8133, *supra,* was enacted to alter the unyielding common-law rule that a will of real estate spoke as of the time of its execution, and real property acquired by the testator after the execution of the will could not pass thereby. See Annotation, 75 A. L. R., page 484 et seq. This was for the reason that, by the common law, 'a devise of realty was in the nature of a conveyance by

deed, and only operated on lands of which the testator was seized when he made his will.' *Reeves* v. *Reeves,* 73 Tenn. (5 Lea), 644, 655. See also, *Wynne* v. *Wynne,* 23 Miss., 251, 57 Am. Dec., 139.

"In Tennessee, this common-law rule was modified by the Act of 1842, chapter 171, the fourth section of which act was as follows:

" 'That any estate, right, or interest in lands acquired by a testator, after making of his will, and of which he died seized or possessed as aforesaid, shall pass thereby in like manner as if owned by him at the time of making of the will, if such clearly appear by the will to have been the testator's intention.' See *Wynne's Lessee* v. *Wynne,* 32 Tenn. (2 Swan), 405, 407, 58 Am. Dec., 66.

"Later, the common-law rule was abrogated by the second section of the Act of 1851-52, chapter 180, which was carried into the Code of 1858 as section 2195, Shan. Code as section 3927, and the Code of 1932, as section 8133, above quoted."

And in the later case of *Lane* v. *Lane,* 22 Tenn. App., 239, 241, 242, 120 S. W. (2d), 993, 995 (*certiorari* denied by this Court), this was said:

"Under this statute many cases hold that a will speaks and takes effect as from the death of the testator, and not from its date, unless its language by fair construction, indicates a contrary intention. Among cases so holding are *Jones* v. *Hunt,* 96 Tenn., 369, 370, 34 S. W., 693, and *Howell* v. *Moore,* 14 Tenn. App., 594.

"If, construing the will as a whole, a different purpose be disclosed, and it appear that the testator intended the objects of his bounty to be reckoned from the execution of the will, that purpose and intention will be controlling in ascertaining who those objects were. *Jones* v. *Hunt, supra.*"

The question of the applicability of the rule of strict construction of the statute relied on for appellant has arisen most frequently where the person rather than the property intended in the devise was in question. But the applicable principle is the same. For example, in *Jones* v. *Hunt,* 96 Tenn., 369, 34 S. W., 693, where the devise was to "the children of my deceased sisters" and brothers, which "children now reside in Louisiana," this Court held that this designation of particular children intended controlled and the will was construed as of the making of the will, and not as of the death of the testator. The Court looked to see who were these particular "children" who at the making of the will resided in Louisiana.

So in *Johnson* v. *Johnson, supra,* it was held that a devise by a husband to "my dear wife" applied exclusively to the individual answering this description at the date of the will, and not to an after-taken wife. Said Chancellor COOPER:

"The property in that item is devised and bequeathed, it will be noticed, to 'my dear wife.' And the solution of the question turns upon the point whether the will designates the object of the testator's bounty, or, in the absence of any positive language designating the object of the testator's bounty, is to be construed, so far as the object is concerned, as of the date of its execution or as of the date of the testator's death.

"The original intent of the testator, every one will concede at once, was to give the property devised to his then existing wife. The words 'my dear wife' point to a person then existing, the qualifying adjective necessarily implying affection for an individual. Such affection being, of course, inconceivable of a person not then occupying the designated relation. To substitute another

object of the testator's bounty, would be to violate his intent and to make a will for him. In the absence of all authority, I should consider it too plain for argument that the will does effectually designate the wife existing at the date of the will as the object of the testator's bounty as if she had been mentioned by her Christian name.''

■ The rule appears to be that where a general descriptive term is used, such as ''my children,'' or ''my property,'' with obvious reference to definite existing persons or things, the description will be related and applied to the particular persons or things thus designated, and not extended to include other persons or objects subsequently coming within the general terms.

■ Applying this rule here, we have a devise of ''certain real estate,'' as follows: ''.  .  .  My property on the Dickerson Road near Nashville, Tennessee.'' The stipulation shows just exactly what this ''property'' consisted of. Here is a definite designation of a specific thing. Viewing this will as a whole and in the light of all the circumstances surrounding its making, we think there can be no doubt that it was the intention of the testator to devise to this grandnephew this property, consisting of 120 acres, on Dickerson Road, and that only.

■ The third question relates to the validity of the residuary clause which reads:

''All the rest and residue of my property of every kind and wheresoever situated, I desire to have distributed among my heirs at law the same as though I had died intestate.''

The insistence of appellant is that this is not a valid residuary clause because the testator devised thereby the same estate that the beneficiaries would have taken by

descent, that consequently the beneficiaries of this void clause take by descent and not under the will.

As said for the appellee, it does not appear that appellant has any such interest in this question (which, as said by the Chancellor, is largely academic, the result in either event.being practically the same) as entitled him to be heard on appeal. He is not an heir at law of the testator. See *Harmon* v. *Harmon,* 141 Tenn., 64, 206 S. W., 333; *Glosson* v. *Glosson,* 104 Tenn., 391, 58 S. W., 121.

All assignments are overruled and the decree of the Chancellor is affirmed.