No. 72,415

In the Matter of the Estate of MARIA SLADE CLINE, Deceased.
(898 P.2d 643)

Opinion filed July 14, 1995.

*Linda S. Mock*, of Bednar and Mock, P.A., of Atchison, argued the cause and was on the brief for appellants.

*Charles E. Hammond*, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The residuary beneficiaries of a will appeal the district court's denial of their claim that the will was ambiguous and, therefore, that the doctrine of equitable apportionment required the estate and inheritance taxes to be apportioned over the entire gross estate. This case was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c).

On October 4, 1992, Maria Slade Cline died testate in Kansas City, Missouri. Cline's will, which was executed in Kansas in August 1982, contains specific bequests of real and personal property and provides that the residue of her estate be distributed to her son, John May. In the event her son failed to survive her, the residue of her estate was to be distributed in equal shares to her son's widow, JoAnn May, and his two daughters, Kristina May Paquette and Karin May Walz (the residuary beneficiaries).

Maria Cline's will also exercised the power of appointment of a marital deduction trust established by the will of Cline's predeceased husband, Neil Cline. Neil Cline's will, although not a part of the record on appeal, established two trusts, a marital deduction trust and a nonmarital trust. A marital deduction trust is "a trust, either living or testamentary, which gives the spouse the income for life and a power of appointment, with terms that qualify the property for the marital deduction." 76 Am. Jur. 2d, Trusts § 11, p. 41.

Maria Cline's will directs that one-fifth of the principal and undistributed income in the trust be distributed to John May. In the event John May failed to survive Cline, the will provides that his one-fifth share be distributed in equal shares to the residuary beneficiaries. The will further provides that the remaining four-fifths of the principal and undistributed income in the trust be distributed in one-fifth shares to parties unrelated to the decedent.

Maria Cline's will also provides that Maria's son, John May, be appointed executor. In the event John May predeceased his mother or was unwilling to act as executor, the will appointed The Security

Bank of Kansas City (the Bank) as successor executor. John May predeceased his mother. On January 8, 1993, the Bank filed a petition for the probate of Cline's will. An order admitting Cline's will to probate and naming the Bank as the executor of the estate of Maria Slade Cline was filed on February 8, 1993. The inventory and valuation of Cline's residual estate consisted of approximately $843,000 in stocks, bonds, mortgages, notes, and cash. The trust assets over which Cline held the power of appointment were worth approximately $1.5 million. The Bank was also the trustee of the trust established by the will of Cline's predeceased husband.

On July 7, 1993, based on its interpretation of Article I of the will, the Bank paid $639,431.67 in federal estate taxes and $126,746.64 in state inheritance taxes generated by the property passing under Cline's will and the trust out of Cline's residuary estate. No notice of the payment of the inheritance and estate taxes was given to the beneficiaries of Cline's estate.

On August 25, 1993, the residuary beneficiaries of Cline's will filed a petition in Wyandotte District Court to interpret the will and apportion the inheritance and estate taxes over the entire gross estate. A copy of the petition was served on the attorney for the Bank and each of the beneficiaries of the trust. No written response was filed.

At a hearing on September 14, 1993, the Bank stated that the taxes were paid from the residue of the estate as required by Article I of the will. The residuary beneficiaries argued that the gross estate, including the trust assets over which Cline held the power of appointment, should bear the burden of the taxes in proportion to how the property generated the taxes. Article I of Cline's will provides:

"All estate, inheritance, legacy, succession, excise or transfer taxes (including any interest and penalties thereon) imposed by any domestic or foreign laws with respect to all property taxable under such laws by reason of my death, whether or not such property passes under this my will or otherwise and whether such taxes be payable by my estate or by any recipient of any such property, shall be paid by my Executor out of my general estate as part of the expense of the administration thereof with no right of reimbursement from any recipient of any such property."

The court denied the petition.

On December 17, 1993, the residuary beneficiaries filed a motion for reconsideration or, in the alternative, a new trial. After a hearing, the court denied the motion. The residuary beneficiaries appeal both the denial of their petition and their motion for reconsideration or new trial. The residuary beneficiaries contend that Cline's will is ambiguous because it does not clearly state an intention that the entire estate and inheritance taxes be paid out of her residuary estate. They argue that the court failed to apply the doctrine of equitable apportionment under which the assets in the trust (over which Cline exercised her power of appointment) would bear a proportionate tax burden. The Bank asserts that Article I of Cline's will directing the payment of all estate, inheritance, legacy, succession, excise, or transfer taxes from "my general estate" was a clear and unambiguous expression of Cline's intent that the taxes be paid out of her residuary estate.

The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court. *In re Estate of Pickrell*, 248 Kan. 247, Syl. ¶ 1, 806 P.2d 1007 (1991). Where a court, either trial or appellate, is called upon to determine the force and effect to be given terms of a will, the court's first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require employment of rules of judicial construction to determine its force and effect. *In re Estate of Wernet*, 226 Kan. 97, Syl. ¶ 1, 596 P.2d 137 (1979); *In re Estate of Reynold*, 173 Kan. 102, 104, 244 P.2d 234 (1952). Where the language of a will is clear, definite, and unambiguous, the court should not consider rules of judicial construction to determine the intent of the testator. *In re Estate of Wernet*, 226 Kan. 97, Syl. ¶ 2. In the interpretation of wills, the primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible and not contrary to law or public policy. 226 Kan. 97, Syl. ¶ 3.

The parties agree that the estate and inheritance taxes generated as a result of Cline's death are governed by the law of Missouri. See K.S.A. 59-806(a)(6) (providing that nothing in act regarding

estates of nonresidents shall affect determination of the ultimate burden of estate or inheritance taxes imposed by reason of death of a nonresident decedent). The parties further agree that if the will is ambiguous, Missouri requires that the rule of equitable apportionment be applied. *In re Estate of Wahlin*, 505 S.W.2d 99, 112 (Mo. App. 1973).

The judicial doctrine of equitable apportionment springs from equitable principles and, by the very nature of its source, stands for the proposition that only property which generates the federal estate tax, whether probate or nonprobate, shall bear the burden of the tax, absent statutory direction otherwise (there being none in Missouri) or a "clearly expressed intention" to the contrary on the part of the testator. 505 S.W.2d at 112.

No Kansas cases interpreting the phrase "my general estate" as used in Article I of the will are cited. The parties cite numerous cases outside Kansas for authority. A line of New York cases is informative. See *Matter of Schuchman*, 51 Misc. 2d 541, 542, 273 N.Y.S.2d 548 (1966) (direction to pay all estate taxes out of the "general estate" equated with the residuary estate so that estate taxes attributable to pre-residuary bequests were payable from the residuary estate; "[i]f the tax clause is to have any significance whatsoever, the reference to 'general estate' has meaning only if equated with 'residuary estate' "); *Matter of Ganter*, 46 Misc. 2d 518, 521, 260 N.Y.S.2d 139 (1965) (where testator's will provided for certain bequests free of inheritance, succession, or transfer taxes and that such taxes be paid from the testator's "general estate," portion of tax normally apportionable to pre-residuary bequests would be paid by the residuary estate); *In re Whitman's Estate*, 125 N.Y.S.2d 165, 168 (1953) (will provision directing that all taxes imposed on estate be paid out of testator's "general estate" before distribution interpreted to mean "residuary estate"; taxes due upon specific devise of one-third of all testator's property to his widow would be imposed upon residuary estate); *Matter of Becher*, 204 Misc. 523, 534, 123 N.Y.S.2d 589 (1953) (where testator had provided in will that estate or inheritance taxes imposed against legacies should be paid from "general estate," quoted term meant residuary estate, and testator intended testamentary benefits

to be exonerated from taxes but not to vary statutory rule of apportionment concerning nontestamentary property, and, therefore, nontestamentary property would bear its pro rata share of taxes); *Matter of Bayne*, 31 Misc. 2d 296, 102 N.Y.S.2d 525 (1950) (where decedent directed that all transfer, succession, or inheritance taxes which might accrue in any jurisdiction be paid out of his "general estate," quoted words meant his "residuary estate."); *Matter of Reid*, 193 Misc. 154, 155-56, 79 N.Y.S.2d 248 (1948) (under will directing that all inheritance taxes levied against estate or legacies, life estates, annuity, and devises set forth in will be paid out of "general estate," testator used general estate as meaning residuary estate and under such direction, all federal estate taxes on nontestamentary benefits as well as benefits passing under will were payable out of residuary estate and were not apportionable); *In re Chambers' Estate*, 54 N.Y.S.2d 88, 90 (1945) (in will requiring estate taxes to be paid out of general estate, "general estate" referred to "residuary estate" remaining after gift of personalty and use of realty to testator's wife, and hence gift to wife was exempt from contribution to estate taxes and interest thereon); *In re Pflomm*, 241 N.Y. 513, 150 N.E. 534 (1925) (will giving residue to trustees with direction to pay one-half of net income to testator's widow for life free of any tax or charge whatsoever, which, if any, shall be paid out of the "general estate" held to manifest intention that such parts of federal and state income taxes as are assessed against widow by reason of her receipt of such income should be apportioned and paid out of entire net income of trust estate); *Matter of Johnson*, 214 App. Div. 1, 5, 211 N.Y.S. 276 (1925) (under will directing trustees to pay one-half of net income of residuary trust to widow for life, free of any tax, "which, if any, shall be borne and paid out of my general estate," "balance" of net income to be paid to testator's two children equally and income taxes on widow's income were payable out of net income remaining after paying widow's half of net income, and not out of capital of trust; "general estate" intended to mean "net income" notwithstanding same words were used in subsequent paragraph to mean gross or entire estate); *Matter of John B. Trevor*, 119 Misc. 277, 282-84, 196 N.Y.S. 152 (1922) (under will directing executors to pay the ex-

penses of the upkeep of the homestead out of the general estate, and providing that no part should be charged against the wife's income, or the principal of the share of any child, the last provision did not limit the general power to pay such expenses out of the "general estate," which comprehended all property passing under the will after the payment of debts, funeral expenses, and administration charges).

The parties direct the court to *Estate of Nesbitt*, 158 Cal. App. 2d 630, 323 P.2d 474 (1958), in which a California District Court of Appeal construed the meaning of the testatrix' will directing the executor to pay, out of her "general estate," all her just debts and funeral expenses and all federal and state estate and inheritance taxes. The California court stated: "By the term 'general estate' the testatrix undoubtedly meant the residue of her estate which remained after the devise and the specific and general bequests." 323 P.2d at 476.

Two cases, not cited by the parties, provide further insight. In *Nashville Trust Co. v. Grimes*, 179 Tenn. 567, 167 S.W.2d 994 (1943), the Tennessee Supreme Court held that the term "general estate," as used in a will provision directing inheritance and estate taxes to be paid out of the general estate, would be construed as intending to charge payment of the taxes to undevised realty and personalty, *i.e.*, the residuary estate. 179 Tenn. at 572.

In the case of *Shipley's Estate (No. 2)*, 337 Pa. 580, 12 A.2d 347 (1940), the Pennsylvania Supreme Court held that where the testatrix in one paragraph of her will provided for the payment of all debts, funeral expenses, taxes, and legacies out of her "general estate," and in a separate paragraph disposed of her residuary estate "including all property and estate over which I may have any power of appointment," the words "general estate" did not include the testatrix's appointive estate and the pecuniary legatees had no interest in it. The court stated:

"We find no warrant whatever for accepting the argument of appellants that the phrase 'general estate' as used in the first paragraph of the will meant something other than the nonappointive estate. The phrase 'general estate' is customarily used as meaning the entire estate held by a person in his individual capacity. If he holds property in some other capacity, such as, e.g., a trustee, or if he has

the testamentary power to dispose of some other property by appointment, that other property is not a party of his 'general estate.' " 337 Pa. at 583.

The court thus held that where the general estate was insufficient for the purpose of payment of all debts, funeral expenses, taxes, and legacies, the pecuniary legatees had no interest in the appointive estate. 337 Pa. at 587.

The Bank claims that *Whitbeck v. Aldrich*, 341 Mass. 326, 169 N.E.2d 882 (1960), is a factually similar case and correctly states the general rule. In that case, the testatrix' will provided that

"[a]ll estate, inheritance, legacy, succession or transfer taxes . . . imposed by any domestic or foreign laws now or hereafter in force with respect to all property taxable under such laws by reason of my death whether or not such property passes under this will and whether such taxes be payable by my estate or by any recipient of any such property, shall be paid by my executor out of my general estate . . . with no right of reimbursement from any recipient of any such property."

At issue in that appeal was whether the federal estate tax on the testatrix' estate, including the trust property over which she exercised a power of appointment, was a charge against the trust property. The testatrix' gross estate amounted to approximately $67,400. The value of the property over which she had a power of appointment under her husband's will was approximately $171,837. The federal estate tax on the gross estate, inclusive of the value of the appointed property, was estimated at approximately $39,700. The federal tax on the testatrix' estate, excluding the appointed property, was less than $200. The court noted that although the estate would not be insolvent if the larger federal tax were paid, the provisions of the testatrix' will could not be fully carried out; there would be insufficient funds to pay two pecuniary legacies in full and no funds for the trust created for the benefit of testatrix' sister. 341 Mass. at 328-29.

The Massachusetts Supreme Court held that the federal estate tax on the entire estate, including property over which the testatrix exercised a power of appointment, was a charge solely against her general or probate estate and not a charge on trust property, despite the fact that there would be insufficient funds to pay two

pecuniary legacies in full and no funds for a trust created for the benefit of the testatrix' sister. The court stated:

"It is hard to think of plainer or more inclusive words. '[A]ll property taxable . . . by reason of . . . [the testatrix'] death' includes more than [the testatrix'] property. The provision expressly applies to property not passing under [the testatrix'] will, that is, in present relevance, to property appointed by her. . . .
. . . .
"Nothing in [the testatrix'] will itself shows that the words in the tax clause were not used in their ordinary sense. We may not depart from that sense to give effect to what may be guessed was her intention. [Citations omitted.] 'It cannot be presumed that anything else was intended than what is stated in the written instrument. It may be, for aught that now can be known, that the precise result which has happened was intended. There is no jurisdiction in equity to prescribe what may seem fairer than the ° ° ° testator has declared.' [Citations omitted.] There being no ambiguity in the will, there is no occasion to go outside it in a search for its meaning. [Citation omitted.] Extraneous matters cannot be used to create an ambiguity not manifested in the will. [Citation omitted.]" 341 Mass. at 328-29.

Here the residuary beneficiaries, in an attempt to prove the terms of the will ambiguous, provide this court with definitions of the words "general," "general estate," "individual capacity," and "held" or "hold." The residuary beneficiaries' brief then states that in light of the definitions,

"the term 'general estate' could within the common meaning of the phrase and its components include property over which the testatrix held a power of appointment. Certainly, one could conclude that there is at least a question as to what should be included within the phrase 'general estate' and in that instance the doctrine of equitable apportionment would mandate that it include the gross estate."

The Bank responds that it is inappropriate for the residuary beneficiaries to take the word "general" out of context and suggest that this single word creates a different meaning other than the clearly expressed intent of the testatrix.

Reviewing Cline's will, it is noteworthy that the phrase "my general estate" is used in Article I, directing payment of taxes, and the term "my residuary estate" is used 13 times throughout the remainder of Cline's will. Neither party addresses this fact. The same words are ordinarily to be given same meaning in one part of the will as in other parts; where different words are used in separate

parts of the will, the context of the will may clearly indicate that testator gave the different words used in separate parts of the will the same meaning.

It is noteworthy that Cline's will does not restrict payment of taxes to only those items passing through "my estate," but instead expressly applies to all property taxable by reason of her death, whether or not such property passes under her will or otherwise and whether such taxes be payable by her estate or by any recipient of any such property. Moreover, Cline's will directs that the taxes be paid out of her general estate "as a part of the expense of the administration thereof." The language in Cline's will states an intention to exonerate all property passing as a result of Cline's death and that the taxes be paid out of her estate.

The language of a will is clear, definite, and unambiguous; therefore, we refrain from consideration of the rules of judicial construction to further analyze the intent of the testatrix. *In re Estate of Wernet*, 226 Kan. 97, Syl. ¶ 2. The term "general estate" in the will provision directing that all taxes imposed by reason of her death, whether or not such property passes under the will or otherwise, should be paid out of the testatrix' "general estate," means that the taxes due by reason of the testatrix' death are to be imposed on the residuary estate.

When interpreting a will, the primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible and not contrary to law or public policy. If Article I of Cline's will was interpreted as residuary beneficiaries suggest, the tax exoneration clause in Article I becomes meaningless.

### Findings of Fact and Conclusions of Law

The residuary beneficiaries further contend that the trial court failed to enter written findings of fact and conclusions of law that adequately support its decision that the taxes should be paid out of the residuary estate. The Bank asserts that the trial court ruled on the residuary beneficiaries' petition based on the court record; that the court invited the participation of counsel in creating the findings of fact that were read into the record at the hearing; and

that the residuary beneficiaries cannot now complain that there are no written findings of fact when the court directed counsel to submit further findings if they desired.

"The requirements of K.S.A. 60-252 and Supreme Court Rule No. 116 (214 Kan. xxxvii) [currently at Rule 165 (1994 Kan. Ct. R. Annot. 169)], concerning statements by the district court of controlling facts and legal principles controlling its decision, are for the benefit of this court in facilitating appellate review and may not be waived by the district court or by the parties to the action." *Henrickson v. Drotts*, 219 Kan. 435, Syl. ¶ 2, 548 P.2d 465 (1976). " ' "[W]hen the record on review will not support a presumption that the trial court found all the facts necessary to support the judgment, the case will be remanded for additional findings and conclusions even though none of the parties objected either in the trial court or in this court." ' [Citations omitted.]" *DeWerff v. Schartz*, 12 Kan. App. 2d 553, 559, 751 P.2d 1047 (1988).

The residuary beneficiaries fail to cite any case law or statutory authority for their assertion that the trial court was required to enter further written findings of fact and conclusions of law where the only question before the court was the interpretation of a written instrument. The residuary beneficiaries fail to recognize that the construction of the will is a question of law. The only issue is whether the terms of the will are ambiguous. After reviewing the written instrument, the trial court found that the will was not ambiguous. Under the circumstances, no other findings of facts or conclusions of law were necessary.

## The Burden of Persuasion

The residuary beneficiaries argue that the trial court erroneously shifted the burden of persuasion to the residuary beneficiaries. To support their position, the residuary beneficiaries cite *Bowen, Administrator v. Hathaway*, 202 Kan. 107, 110, 446 P.2d 723 (1968), and *G & S Investment Co. v. Close*, 240 Kan. 48, 51, 726 P.2d 1317 (1986), which observes that "[w]here each party to a lawsuit had a fair opportunity to present all his evidence, the question as to which litigant had the burden of proof is immaterial unless the trial court's ruling thereon shifts the risk of nonpersuasion from the litigant who must bear it in order to prevail in the action."

It is the residuary beneficiaries who assert that the will is ambiguous. The burden of proving a disputed fact or issue rests upon

the party asserting it as a basis of claim and remains with that party throughout the trial. This is true even though it may be incumbent upon the other party to proceed with the introduction of evidence at some stage of the proceedings. The burden of going forward with the evidence does not change the burden of proving a disputed issue. 202 Kan. at 110.

Where the language of a will is clear, definite, and unambiguous, the court should not consider rules of judicial construction to determine the intent of the testator. Here, the trial court determined as a matter of law that Article I of Cline's will providing that all taxes be paid out of "my general estate" was not ambiguous. After finding the will was not ambiguous, the trial court refused to apply any presumption that would change the clear terms of the will and ruled against the residuary beneficiaries. The court did not shift the burden of persuasion to the residuary beneficiaries once it found as a matter of law that Article I of the will was not ambiguous.

The residuary beneficiaries allege that there were ex parte communications prior to the proceedings which render the court's decision suspect. There is nothing in the record on appeal confirming the residuary beneficiaries' allegation of ex parte communications.

Because the will is not ambiguous, the remainder of the residuary beneficiaries' arguments as to the failure of the district court to grant reconsideration do not merit further analysis.

Affirmed.